**UNIFIED ARCHITECTURE & ENGINEERING, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 99–514 C.

United States Court of Federal Claims.

Filed Feb. 4, 2000.

Reissued for Publication on Feb. 25, 2000 [1].

1. This order was originally filed under seal on February 4, 2000 in accordance with the court's August 4, 1999 protective order in this matter. Pursuant to a February 4, 2000 order, the court allowed the parties to advise as to the portions of this order that should be redacted for publication. Redactions suggested by the parties have been incorporated into the order, and the redacted order is issued for publication this date, February 25, 2000.

Cyrus E. Phillips, IV, Washington, D.C., for plaintiff.

Erin E. Powell, Washington, D.C., with whom were Acting Assistant Attorney Gen-

eral David W. Ogden, Director David M. Cohen, and Assistant Director Anthony H. Anikeeff, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This post-award protest comes before the court on cross-motions for judgment on the administrative record. Plaintiff, Unified Architecture & Engineering, Inc. (Unified), contests the decision of the National Aeronautics and Space Administration (NASA) to award a contract to Gilcrest Electric and Supply Company (Gilcrest) to provide maintenance, operations, recertification, and engineering services. Plaintiff seeks (1) declaratory and injunctive relief on the grounds that (a) the contract award was arbitrary and capricious and (b) the contract was awarded contrary to applicable procurement laws and regulations and (2) declaratory and equitable relief based on defendant's breach of the implied-in-fact contract to fairly and honestly consider the competitive proposals. For the reasons set forth below, the court grants defendant's motion and denies plaintiff's motion, and in doing so, denies plaintiff's motion for a preliminary injunction.

## BACKGROUND

On November 2, 1998, NASA issued Solicitation No. 3–095280 (solicitation) for competitive proposals from small business offerors for a cost-plus-incentive fee contract, which contained some fixed price elements, to provide maintenance, operation, recertification, and engineering services to support the major research facilities and systems at NASA's John H. Glenn Research Center and its Plum Brook Station in Ohio. The contract consolidates requirements previously obtained by NASA under four separate contracts. The facilities covered in this acquisition included, but were not limited to, the 10x10 Supersonic Wind Tunnel, the 8x6 Supersonic Wind Tunnel, the Engine Research Building, the Central Air Equipment Building, and the Cooler Tower Water Facility. The solicitation speci-

fied a base performance period of two years plus three, one-year options. The estimated cost of the contract over a five year term is 39 million dollars.[2] Six bidders, including plaintiff, submitted proposals. All unsuccessful bidders were notified by both verbal and written notice on May 5, 1999. On May 18, 1999, NASA awarded the contract to Gilcrest.

The solicitation detailed the method of selection and evaluation criteria for the proposals. First, the solicitation identified three evaluation factors to be utilized in reviewing all proposals: Mission Suitability, Cost/Price and Experience and Past Performance. Each of these factors were to be considered "approximately equal to each other in importance" in the overall evaluation. The mission suitability factor was further subdivided into the following three sub-factors and relevant weightings: Understanding the Requirements (400 points), Management Approach (500 points), and Key Personnel (100 points). The solicitation specifically provided that selection for award of the contract would be to the offeror whose proposal provided the best value to the government. The solicitation further explained that the contract may be awarded to a proposal that is higher in cost than the other proposals if the benefits of the higher priced proposal merited the additional costs.

The Source Selection Authority (SSA) appointed a Source Evaluation Committee (SEC) to conduct the evaluation of proposals. The SEC was divided into three subcommittees: Technical, Management, and Experience and Past Performance. The Technical and Management Committees were responsible for evaluating the proposals under the mission suitability factor. Mission suitability was evaluated by assessing overall strengths and weaknesses, assigning a numerical score, and determining an overall adjectival rating. The cost price factor was evaluated for cost realism based on an offeror's proposed technical approach. Cost price was also reviewed to identify major omissions and errors, and

**2.** The documents in the administrative record reflect cost estimates for the contract over a five year period varying from 39 million dollars to 39.5 million dollars and 41 million dollars. This

factual discrepancy is of no concern to the court because disputes over facts that are not outcome determinative do not preclude entry of summary judgment. RCFC Rule 56.

probable cost adjustments were made where appropriate. Finally, the experience and past performance factor was evaluated by the Experience and Past Performance Committee by using the written information provided by the offerors, the submitted client questionnaires, and other sources available to the government. This factor received an adjectival rating with associated strengths and weaknesses, but no numerical score.

After the SEC completed its initial evaluation of the proposals, the SSA selected the four most highly rated proposals in the competitive range to continue competing for the contract. Prior to issuing a request for Final Proposal Revisions (FPRs), the SEC provided the remaining bidders with their identified proposed weaknesses, questions, and any adverse information relative to their experience and past performance. NASA then issued a request for FPRs; responses were received on March 8, 1999. On March 30, 1999, the SEC met with the SSA to present its final consensus findings. The SEC's final consensus findings assigned a higher mission suitability rating to Unified than to Gilcrest. Out of a possible 1000 points, Unified received [* * *] points and Gilcrest received [* * *] points, a difference of [* * *] points.[3] As for the second evaluation factor, cost/price, Unified's total proposed cost after probable cost adjustments of [* * *] was [* * *] lower than Gilcrest's proposed cost of [* * *]. As for the final evaluation factor, experience and past performance, Gilcrest outscored Unified by receiving a rating of "Very Good" as compared to Unified's rating of "Good".

After consideration of the SEC's findings, the SSA concluded that Gilcrest's proposal offered the best value to NASA, and that Gilcrest should be awarded the contract. In the source selection statement, the SSA acknowledged that Unified received a higher mission suitability rating than Gilcrest, and concluded that both proposals were "essentially equal" in cost/price. The SSA explained that Unified's slight probable cost advantage was offset by the higher overall cost confidence Gilcrest's proposal offered NASA based on its proposed general and administrative expense (G & A) cap and its DCAA audit experience. After examining the experience and past performance factor, the SSA noted a clear distinction between Gilcrest's and Unified's proposals in favor of Gilcrest. Finally, the SSA explained it's rationale for the tradeoffs made in its best value analysis. The SSA concluded that as there was no material advantage between the proposals in cost/price, the significantly lower performance risk associated with Gilcrest's proposal justified its selection over Unified's small numerical scoring advantage.

NASA debriefed Unified on its proposal on May 7, 1999. On May 21, 1999, plaintiff filed a formal bid protest with the General Accounting Office (GAO). The GAO dismissed the protest on July 14, 1999, after concluding that the protest was untimely filed.

On July 28, 1999, plaintiff filed suit in this court. In its complaint, Unified alleges the following defects in the procurement process: (1) that NASA failed to consider the evaluated probable cost of the competitive proposals; (2) that NASA failed to properly evaluate Gilcrest's final revised proposal under the mission suitability and relevant experience and past performance factors; (3) that NASA improperly rated its competitive proposal under the past performance factor; (4) that NASA improperly assessed a weakness against Unified's proposal under the relevant experience factor; (5) that NASA did not reevaluate Gilcrest's relevant experience and past performance in its final revised proposal which substituted a proposed team member; (6) that NASA failed to consider changes to Gilcrest's final revised proposal when performing the best value analysis; (7) that NASA failed to contemporaneously document the technical evaluation, source selection decision, and procurement transaction; and (8) that NASA breached its implied-in-fact contract to treat Unified fairly in the selection process. Plaintiff asks the court to enjoin performance under the contract, declare the contract invalid, order NASA to terminate

---

**3.** Upon request of the parties, protected information has been replaced by asterisks within brackets in the published version of the order.

the contract with Gilcrest, order NASA to recompete the award consistent with applicable legal requirements, and award Unified proposal preparation costs for NASA's breach of its implied-in-fact contract to fairly and honestly consider its proposal.

On July 28, 1999, in separate motions, plaintiff sought preliminary injunctive relief and a protective order. However, in a July 30, 1999 Joint Status Report, the parties agreed to consolidate the motion for a preliminary injunction with a final hearing on the merits. The parties also agreed to the contents of the administrative record and deemed additional discovery unnecessary. On August 4, 1999, the court issued a protective order to be used in these proceedings. On August 26, 1999, defendant filed the administrative record under seal.

On October 1, 1999, both defendant and plaintiff filed motions for judgment upon the administrative record. Plaintiff argues that summary judgment is appropriate because NASA's decision to award the contract to Gilcrest was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Defendant contradicts plaintiff's allegations, and argues that summary judgment in its favor is appropriate because the administrative record establishes that NASA's decision to award Gilcrest the contract was not arbitrary and capricious, but rather was in accordance with law and grounded in reason. Defendant also filed a motion to dismiss plaintiff's claim that NASA breached an implied duty to fairly and honestly consider Unified's proposal for lack of subject matter jurisdiction.

## DISCUSSION

### I. Motion to Dismiss

■ Before addressing the merits of the cross-motions for judgment on the administrative record, the court will address defendant's argument that Count VIII of plaintiff's complaint, breach of implied-in-fact contract, should be dismissed for lack of subject matter jurisdiction because it does not fall within the scope of this court's bid protest jurisdiction. In Count VIII, plaintiff sought recovery of bid preparation costs based on its assertion that NASA breached an implied contract with plaintiff and an implied covenant of good faith and fair dealing. Defendant argues that the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320 § 12, 110 Stat. 3870, 3874–75, supercedes the implied contract theory of good faith and honest consideration. Plaintiff contends that this court's jurisdiction over claims founded on implied-in-fact contracts rests with 28 U.S.C. § 1491(a)(1).

The Court of Federal Claims is a court of limited jurisdiction. The Tucker Act grants this court jurisdiction to hear claims against the United States that are "founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (1994). Prior to the ADRA, disappointed bidders challenged the award of contracts based on alleged improprieties in the procurement process in this court pursuant to the jurisdictional grant in § 1491(a) of the Tucker Act to render judgment upon claims for breach of an implied contract to consider bids and proposals fairly and honestly. *See Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed.Cir.1998) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir.1983) and *Central Arkansas Maintenance, Inc. v. United States*, 68 F.3d 1338, 1341 (Fed.Cir.1995)); *see also Labat–Anderson, Inc. v. United States*, 42 Fed.Cl. 806, 832 (1999). With the passage of the ADRA, Congress amended the Tucker Act to give this court jurisdiction to consider pre-award and post-award bid protests for actions filed on or after December 31, 1996. *See* 28 U.S.C. § 1491(b)(1)-(4) (1994 & Supp. 1997). Although in many cases the ADRA amendments obviate the need to frame a bid protest claim as a breach of implied-in-fact contract claim, the amendments do not supercede the implied contract theory of good faith and honest consideration as defendant contends. The court finds that the ADRA makes no mention of the breach of implied contract theory, nor does it alter § 1491(a) of the Tucker Act, which authorizes this court to hear claims against the United States that are founded upon implied contracts with the United States. Accordingly, defendant's motion to dismiss Count VIII of plaintiff's complaint is hereby denied.

Notwithstanding the court's holding that implied-in-fact contract claims fall within this court's jurisdiction, it is unnecessary in this case to consider plaintiff's breach of implied-in-fact contract claim separately and independently from plaintiff's other claims. The very essence of plaintiff's bid protest is that its bid was not "fairly and honestly" considered. In this case, plaintiff's breach of implied contract claim is comprised of precisely the same allegations supporting its bid protest claim. In addition, plaintiff is not prejudiced because (1) the standard of review is the same for bid protest claims and claims of breach of implied-in-fact contract, and (2) plaintiff's requested relief, bid preparation and proposal costs, is available under both theories. Accordingly, it is not necessary to address the merits of plaintiff's claim of breach of implied-in-fact contract because that analysis would duplicate the court's determinations made with regard to plaintiff's motion for judgment on the administrative record.

## II. Judgment on the Administrative Record

The court decides this case on cross-motions for judgment on the administrative record. Motions for judgment on the administrative record are reviewed under the same standards as motions for summary judgment. *See* RCFC 56.1. Consequently, judgment on such motions is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. In deciding a motion for judgment on the record, the role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505.

The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *See Prineville Sawmill Co., Inc. v. United States,*

859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987)); *see also Compubahn, Inc. v. United States,* 33 Fed. Cl. 677, 680 (1995). Summary judgment will not necessarily be granted to one party or another simply because each has moved for summary judgment. *See Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–693 (4th Cir. 1968)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *See Corman v. United States,* 26 Cl. Ct. at 1014; *Compubahn, Inc. v. United States,* 33 Fed.Cl. 677 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *See Mingus Constructors, Inc.,* 812 F.2d at 1391.

### A. The Standard of Review

The court's jurisdiction over post-award bid protests is provided for by the Tucker Act. 28 U.S.C. § 1491(b) (1994 & Supp.1997). The Tucker Act directs this court to review an agency's decision pursuant to the standards prescribed in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (1994). *See* 28 U.S.C. § 1491(b)(4). Specifically, the court is authorized to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994); *See Miller–Holzwarth, Inc. v. United States,* 42 Fed.Cl. 643, 649 (1999). Generally, review of a post-award bid protest action is based on the administrative record developed by the relevant contracting agency, which in this case is NASA.

■■■ The arbitrary and capricious standard is highly deferential. The reviewing court cannot substitute its judgment for that of the agency; rather, the court reviews the facts to determine whether the agency's decision was legally permissible, reasoned, and factually supported. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

If the procurement official examined the relevant factors and articulated a rational basis for the decision, the agency's action must be upheld. *See Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285–286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *see also Delbert Wheeler Const., Inc. v. United States,* 39 Fed.Cl. 239, 247 (1997).

■ In evaluating whether an agency has acted arbitrarily or capriciously, the court considers whether: (1) there was subjective bad faith on the part of procurement officials; (2) there was not a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; and (4) pertinent statutes or regulations were violated. *See Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–1204 (1974); *see also Delbert Wheeler Const., Inc.,* 39 Fed.Cl. at 239. However, in order for the protestor to prevail where the agency has committed error in the procurement process, the protestor must show that the error was significant and prejudicial. *See Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (1999) (citing *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996) and *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir.1996)). To show prejudice, a protestor must establish there was a substantial chance that it would have received the contract award but for the agency's error. *See Alfa Laval Separation, Inc.,* 175 F.3d at 1367 (quoting *Statistica, Inc. v. Christopher,* 102 F.3d at 1582). A protestor's burden of proof is great in negotiated procurements because the contracting officer is entrusted with a relatively high degree of discretion. *See LaBarge Prods., Inc. v. West,* 46 F.3d 1547, 1555 (Fed.Cir.1995) (citing *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 617 F.2d 590, 598 (1980)). Small, harmless errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir. 1996) (quoting *Grumman Data Sys. Corp. v. Widnall,* 15 F.3d 1044, 1048 (Fed.Cir.1994)). Finally, in reviewing a government procurement, the court should defer to an agency decision that is "grounded in reason" even if the court itself might have chosen a different bidder. *See E.W. Bliss Co.,* 77 F.3d at 449.

## 1. Plaintiff's Motion for Judgment on the Administrative Record

Plaintiff raises five arguments before the court in support of its motion for judgment on the administrative record. Plaintiff argues that (1) summary judgment is appropriate because NASA's decision to award the contract to Gilcrest was arbitrary, capricious, an abuse of discretion, and not in accordance with the law and (2) it has in fact been prejudiced by NASA's actions because it had a substantial chance of receiving the contract award absent NASA's error. Defendant contends that plaintiff is not entitled to summary judgment because the administrative record establishes that NASA had a rational basis to award Gilcrest the contract. Moreover, defendant argues that NASA's decision to award Gilcrest the contract was proper and in accordance with the law.

■ Plaintiff first argues that defendant's award decision was contrary to statute and regulations because it was based solely on the experience and past performance factor rather than the factors as specified in the solicitation. Pursuant to statute and regulation, at minimum a solicitation must include a clear statement of all significant factors and subfactors to be considered in the evaluation process as well as the relative importance assigned to each. *See* 10 U.S.C. § 2305(a)(2)(A)(ii)(1994 & Supp.1997). Furthermore, the contract award must be based solely on the factors specified in the solicitation. *See* 10 U.S.C. § 2305(b)(1)(1994). Where a tradeoff process, such as a best value analysis, is utilized in the evaluation procedure, all evaluation factors and significant subfactors and their relative importance must also be clearly stated in the solicitation. *See* 48 C.F.R. § 15.101–1(b)(1) (1998). Best value awards allow the government to accept other than the lowest priced proposal where the perceived benefits of the higher priced proposal merit the additional costs. *See* 48 C.F.R. § 15.101–1(c) (1998). The government is required to document in the source selection decision its rationale for any business judgments and tradeoffs made, including benefits associated with additional costs.

*See* 48 C.F.R. § 15.308 (1998). However, procurement officials have substantial discretion to determine which proposal represents the best value for the government. *See E.W. Bliss Co.*, 77 F.3d at 449 (citing *Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958 (Fed.Cir.1993) and *Widnall v. B3H Corp.*, 75 F.3d 1577 (Fed.Cir.1996)). The court's task on review of NASA's best value choice is to determine whether it was grounded in reason. *See Widnall*, 75 F.3d at 1579.

■■■ In this case, the solicitation identified three evaluation factors to be considered "approximately equal" to each other in importance. The evaluation was to be based on consideration of Mission Suitability, Cost/Price and Experience and Past Performance. The solicitation also specifically provided that selection for award of the contract would be to the offeror whose proposal provided the best value to the government. The solicitation further explained that the contract may be awarded to a proposal that is higher in cost than the other proposals if the benefits of the higher priced proposal merited the additional costs.

Plaintiff contends that defendant disregarded the relative importance of the evaluation factors identified in the solicitation under the guise of a best value selection. Plaintiff argues that defendant's award decision was based solely on the experience and past performance factor rather than the factors as specified in the solicitation. Specifically, plaintiff alleges that NASA disregarded Unified's higher mission suitability score and lower evaluated probable cost/price, and relied only on the experience and past performance factor.

The administrative record reveals that the SSA considered all three evaluation factors detailed in the solicitation. Although the solicitation required that the evaluation factors be treated approximately equal, the SSA was also required to select the best value contractor. In this case, the SSA found Gilcrest's proposal to be the best value for the government but not before considering each of the evaluation factors. In the source selection decision, the SSA acknowledged that Unified was rated higher than Gilcrest in the mission suitability factor. Moreover, after comparing the cost/price proposals, the SSA concluded that they were "essentially equal". The SSA explained that Unified's probable cost advantage of [* * *] was offset by Gilcrest's G & A cap and its DCAA audit experience, both of which provide higher overall cost confidence. In the final evaluation factor, experience and past performance, the SSA noted a clear distinction between Gilcrest's and Unified's proposals in favor of Gilcrest which was attributed to Gilcrest's familiarity with the Glenn Research Center facilities. Finally, the SSA explained it's rationale for the tradeoffs made in its best value analysis. The SSA concluded that the strength of Gilcrest's past performance and familiarity with Glenn Research Center facilities/systems significantly lowered performance risk which justified its selection over Unified's small numerical scoring advantage.[4] Since the SSA determined there was no material advantage in cost/price of either proposal, the SSA selected Gilcrest for award of the contract.

Clearly, the SSA recognized Unified's strengths and excellent ratings under the mission suitability factor, but ultimately decided that Unified's higher mission suitability score was more than offset by Gilcrest's superior experience and past performance rating. In addition, the SSA provided an adequate rationale in his selection document to support his determination that the cost price of the proposals was essentially equally. The administrative record illustrates that the SSA did not arbitrarily discount Unified's higher mission suitability score as plaintiff contends, but rather that the SSA considered it along with the other two evaluation factors as required by the evaluation scheme established in the solicitation. Moreover, determination of what constitutes an advantage over other proposals and what features would be beneficial to NASA was within the discretion of the SSA. The court concludes that the

---

4. Although Unified received a higher mission suitability rating, the actual difference in scores between the two was quite small. Out of a possible 1000 points, Unified received [* * *] points and Gilcrest received [* * *], a difference of only [* * *] points.

SSA's best value decision was made in accordance with the evaluation scheme outlined in the proposal, grounded in reason, and completely within the SSA's discretion.

■ Second, plaintiff argues that NASA's cost realism analysis of its proposal was irrational, arbitrary, and capricious because it did not make a downward probable cost adjustment to reflect an overstatement in its cost proposal of the fixed price items. Plaintiff admits making two errors in the preparation of its cost proposal. First, plaintiff admits mistakenly assuming that the proposed annual expenditures for materials and special task labor included general and administrative expenses and incentive fees. Plaintiff's second mistake was including an amount for general and administrative expenses and incentive fees in its proposal amounts for fixed price items. NASA's price analyst acknowledged both errors, however, its probable cost adjustment corrected plaintiff's understatement but not its overstatement of general and administrative expenses and incentive fees associated with the fixed price items. Plaintiff argues that a proper cost realism analysis would have considered both the understatement and the overstatement. Plaintiff states that had a proper cost realism analysis been conducted, its cost/price advantage over Gilcrest's proposal would have been materially greater. In its reply, defendant contends plaintiff's argument is without merit because Unified's proposal did not state a percentage or actual dollar amount for general and administrative expenses and incentive fees which would have permitted a downward adjustment.

In this case, in its cost realism analysis, NASA made a probable cost adjustment addressing plaintiff's understatement but not its overstatement of general and administrative expenses and incentive fees in its cost proposal. Although NASA's action might have been arbitrary and capricious, plaintiff still has not demonstrated that NASA's error was significant and prejudicial. Plaintiff cannot show that there was a substantial chance that it would have received the contract award but for NASA's improper probable cost adjustment without stating a percentage, an actual dollar amount representing general and administrative expenses and incentive fees, or an estimate of what its final adjusted cost should have been. Moreover, even if plaintiff specified the cost price of its proposal after a proper probable cost adjustment, NASA's error would not warrant summary judgment in favor of plaintiff. The court concludes that a probable cost adjustment correcting the fixed price portion of the contract would be minimal because (1) NASA adjusted the non-fixed price portion of the contract by $1.1 million and (2) the non-fixed price portion of the contract was 5.5 times greater than fixed price portion of the contract. Such a minimal change in Unified's cost price proposal would not offset the overall higher cost confidence NASA found in Gilcrest's cost proposal or upset the SSA's conclusion that the contract proposals were essentially equal in cost price. An error of this magnitude alone is not sufficient grounds for rejecting the entire procurement.

■ Third, plaintiff states that the contract must be terminated based on Gilcrest's material misrepresentation that it would deliver for contract performance the program manager identified in its initial and final revised proposals. Essentially, plaintiff claims that NASA is a victim of a "bait and switch" by Gilcrest. The term "bait and switch" generally refers to an offeror's misrepresentation in its proposal of the personnel that it expects to use during contract performance. *See Planning Research Corp. v. United States*, 971 F.2d 736 (Fed.Cir.1992). To demonstrate a "bait and switch," a protestor must show that (1) the awardee represented in its proposal that it would rely on certain specified personnel in performing the services; (2) the agency relied on this representation in evaluating the proposal; (3) it was foreseeable that the individuals named in the proposal would not be available to perform the contract work; and (4) personnel other than those proposed are performing the services. *See Labat–Anderson, Inc. v. United States*, 42 Fed.Cl. 806, 855 (1999) (citing *Ann Riley & Assoc., Ltd.*, Comp. Gen. B–271741.3, March 10, 1997, 97–1 CPD ¶ 122, at 2–3). Termination of a contract award based on the proposal is appropriate where such a misrepresentation materially influ-

ences an agency's evaluation of an offeror's proposal. *See Ann Riley & Assoc., Ltd.,* 97–1 CPD ¶ 122 at 2 (citing *ManTech Advanced Sys. Int'l, Inc.,* Comp. Gen. B–255719.2, May 11, 1994, 94–1 CPD ¶ 326).

■ Plaintiff claims that NASA is a victim of "bait and switch" by Gilcrest because (1) Gilcrest identified an individual qualified and committed to act as program manager upon award of the contract; (2) the program manager was evaluated under the "key personnel subfactor" in the source selection process; (3) and Gilcrest failed to deliver the person for contract performance. Furthermore, plaintiff maintains that it was foreseeable that Gilcrest's program manager would not be available to perform the work. Plaintiff refers to the fact that the commitment letters were addressed to [* * *] and that the obligors agreed to provide services to the [* * *] Team in the event that the procurement was awarded. Plaintiff states that by substituting [* * *] for [* * *] as a teaming partner, it violated a condition of employment in the commitment letter and voided the commitment.

The administrative record clearly establishes that (1) Gilcrest represented in its proposal that it would rely on [* * *] to act as program manager and (2) NASA relied on this representation in evaluating the proposal under the key personnel element of the mission suitability factor. Plaintiff also presented an advertisement, dated May 23, 1999, soliciting employment as a program manager with Gilcrest for a facility operation and maintenance contract at the NASA Glenn Research Center, as circumstantial evidence that [* * *] is not acting as program manager of the contract. The remaining issue is whether it was foreseeable that [* * *] would not be available to perform the contract work. Defendant contends that there is no evidence of misrepresentation beyond plaintiff's speculation that Gilcrest knew at the time it submitted its FPR that the program manager would not be available to perform the contract.

On the facts of this case, there appears to be no evidence of intent by Gilcrest to effectuate a "bait and switch". In its initial proposal, Gilcrest submitted the resumes and commitment letters of [* * *] proposed key personnel. All offerors were advised that all changes in FPRs were to be traceable to the initial proposals. In its FPR, Gilcrest substituted [* * *] as a teaming partner in [* * *] place, however Gilcrest continued to represent that [* * *] would perform the duties of program manager. Although the commitment letters were addressed to [* * *] and the obligors agreed to provide services in the event that the procurement was awarded to the [* * *] Team, it was reasonable for NASA to conclude that the commitments did not depend solely on the presence of [* * *] as a teaming partner, particularly in light of Gilcrest's FPR. Moreover, if plaintiff's theory of foreseeability were correct, then plaintiff should be arguing that all [* * *], rather than just one, of the obligors who gave their commitments to act as key personnel would be unavailable to perform on the contract.

Furthermore, had the court found evidence of intentional misrepresentation, termination of NASA's contract award is not appropriate because the alleged misrepresentation would not have materially influenced NASA's evaluation of Gilcrest's proposal given the relative insignificance of the key personnel factor compared to the other elements comprising the mission suitability factor. If NASA were to reevaluate the FPR with the knowledge that the proposed program manager would be unavailable to perform the contract, any reduction in Gilcrest's overall mission suitability score would be negligible considering that (1) the program manager was one of [* * *] key personnel evaluated under the subfactor and (2) the minimal weight accorded to the subfactor in the evaluation scheme. Even though Unified's mission suitability advantage would improve slightly, it is unlikely that such an improvement would be sufficient enough to tip the balance in Unified's favor given the SSA's discretion to make a best value selection. In this case, there has been no showing that it was foreseeable to Gilcrest that [* * *] would not accept employment. The law does not require termination of a contract where personnel is an evaluation factor in the happenstance that one of the proposed personnel is ultimately unavailable to perform the contract. The court con-

cludes that there is no evidence of a "bait and switch", and even if there were, in this case it would not be serious enough to require termination of the contract.

■ Fourth, plaintiff argues that the government unlawfully evaluated its past performance in violation of 41 U.S.C. § 405(j)(2) and FAR 15.305(a)(2)(iv). Pursuant to 41 U.S.C. § 405(j)(2) and FAR 15.305(a)(2)(iv), where past performance is an evaluation factor in procurement competitions, an offeror may not be evaluated favorably or unfavorably where there is no record of relevant past performance or where information on past performance is not available. Plaintiff states that it's proposal was properly evaluated as lacking past performance information concerning reliability centered maintenance, computerized maintenance management systems, and predictive testing and inspection technologies. According to law, plaintiff argues, it should have received a neutral evaluation rather than the minor weakness it received for having no practical experience performing a contract of this scope and magnitude.

In its own motion for summary judgment, defendant argues that plaintiff's allegations that (1) NASA failed to properly rate Unified's competitive proposal under the past performance factor and (2) NASA's assessment of a weakness against Unified under the relevant experience factor in Counts III and IV are unsupported by the administrative record. Defendant further objects to plaintiff's allegation because Unified did not receive an unfavorable past performance rating in violation of law; rather, defendant points out that Unified's overall adjectival rating for this factor was "good".

The issue is whether it was arbitrary, capricious or not in accordance with the law to issue anything other than a neutral rating. The court finds that even if NASA had given Unified a neutral rating, as opposed to assessing a minor weakness for having no practical experience performing a contract of this scope and magnitude, Unified's overall rating for the experience and past performance factor would not have been effected. Pursuant to the rating definitions relied upon by the SEC, items considered "neutral" are given

an adjectival rating of "good". Unified's overall rating for this factor was "good". Therefore, the elevation of a minor weakness to neutral would not enhance Unified's contract proposal's competitiveness by improving its overall experience and past performance rating; rather, it would reinforce its adjectival rating of "good". NASA was permitted to consider Unified's relevant experience and was required to compare that to Gilcrest's experience. Therefore, it is not unreasonable for NASA to conclude that Gilcrest outscored Unified when comparing the two overall experience and past performance ratings. The court concludes that even if NASA violated a statute or procurement regulation by assessing a minor weakness, plaintiff cannot succeed with its motion because it cannot show the error was significant or prejudicial.

Fifth, plaintiff argues that the source selection decision is not grounded in reason and is unsupported by the record. Plaintiff supports its argument with the following familiar allegations, that: (1) the SSA disregarded its higher mission suitability score; (2) the mission suitability score for Gilcrest was a product of Gilcrest's material misrepresentation as to the commitment of its proposed program manager; (3) Unified's and Gilcrest's final proposal revisions were not "essentially equal in cost/price" given the [* * *] cost advantage of Unified's final proposal over Gilcrest's, which would have been even greater had the price analyst not failed to consider Unified's overstatement of general and administrative expenses and incentive fees for the fixed price items; and (4) the SSA failed to document that the benefits that NASA expects to receive by awarding the contract to Gilcrest are commensurate with the additional cost of the contract. These allegations are familiar to the court because they are tantamount to plaintiff's first four arguments supporting its motion for judgment on the administrative record. Plaintiff essentially argues that the alleged defects in the procurement process taken in the aggregate prove that the source selection decision is not grounded in reason. As the court has already addressed each of these arguments individually, ultimately finding that plaintiff

has either failed to show (1) that NASA's decision to award the contract to Gilcrest was arbitrary, capricious, an abuse of discretion, or not in accordance with the law or (2) that NASA's error was significant and prejudicial, it is not necessary to analyze the same arguments presented again. It is clear from the administrative record that the SSA explained the basis for the contract award in the source selection statement and that choosing Gilcrest as the best value offeror was within the SSA's discretion. In conclusion, none of plaintiff's allegations of improprieties in the procurement process supports a finding of summary judgment in its favor.

### 2. Defendant's Motion for Judgment Upon the Administrative Record

Each of defendant's arguments contained in its motion for judgment upon the administrative record address and refute the individual claims made by plaintiff in its complaint, one which has been addressed and decided by this court while considering plaintiff's motion. First, defendant argues that summary judgment should be entered in favor of the United States with respect to Count I of plaintiff's complaint because the SSA extensively considered the differences in the cost proposals submitted by Unified and Gilcrest. In Count I of the complaint, plaintiff alleges that NASA failed to consider the evaluated probable cost of the competitive proposals submitted by Unified and by Gilcrest. Defendant states that plaintiff's allegation is without merit as the administrative contains simple evidence that the SSA extensively considered the differences in the cost proposals. As evidence that NASA considered the differences between the proposals, defendant points to the SSA's comments in the source selection decision addressing (1) Unified's and Gilcrest's individual cost proposals and (2) a comparison of the two proposals, including the tradeoffs presented by each, concluding that they were "essentially equal". Specifically, the SSA explained that Unified's slight probable cost advantage was offset by Gilcrest's G & A expense cap and its DCAA audit experience both which provide NASA higher overall cost confidence. The administrative record illustrates that the SSA carefully considered the evaluated probable cost of the competitive proposals in the procurement at issue and its determinations were based upon a reasonable factual basis and informed analysis.

Second, defendant argues that summary judgment in favor of the United States is appropriate with respect to Counts II and V because plaintiff's allegations that the SSA improperly relied upon the SEC's recommendations where the SEC did not consider the changes made in Gilcrests's final proposal have no merit. Defendant identifies passages in the administrative record that demonstrate that the SEC was very much aware of the changes made in Gilcrest's final proposal and that both the SEC and SSA considered Gilcrest's revisions while making the award determination. The administrative record reflects that Gilcrest alerted the SEC to the possibility of substituting a teaming member during teleconference discussions prior to submitting its FPR. In its FPR, Gilcrest announced the addition of Micro Craft as a new team member and included lengthy descriptions of Micro Craft's background and relevant experience and past performance. Further, both the Technical Committee and the Experience and Past Performance Committee reconvened to finalize their evaluations of the proposals in light of the FPRs which resulted in changes made by each committee to the ratings. Moreover, the Experience and Past Performance Committee awarded Gilcrest's proposal a minor strength as a result of the addition of Micro Craft to the Gilcrest team. Finally, it is clear that the SSA considered the SEC's final recommendations in the source selection statement because the SSA summarized the SEC's ratings and recommendations, and specifically referenced the minor strength awarded to Gilcrest's team by the Experience and Past Performance Committee.

Next, in a closely related argument, defendant contends that summary judgment in favor of the United States is appropriate with respect to Count VI of plaintiff's complaint. In Count VI, plaintiff alleges that the SSA failed to consider the changes made to Gilcrest's FPR while conducting the best value analysis.

In a best value procurement, the SSA is required by regulation to select the source whose proposal is the best value to the government while contemporaneously ensuring that the proposals are evaluated based solely on the factors and subfactors contained in the solicitation. *See* 48 C.F.R. § 15.303(4), (6) (1998). The source selection decision must be documented and the documentation must include the rational for any business judgment or tradeoffs made or relied on by the SSA, including benefits associated with additional costs. *See* 48 C.F.R. § 15.308 (1998). However, procurement officials have substantial discretion to determine which proposal represents the best value for the government. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996) (citing *Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d 955, 958 (Fed.Cir.1993) and *Widnall v. B3H Corp.,* 75 F.3d 1577 (Fed.Cir. 1996)). The court's task on review of NASA's best value choice is to determine whether it was grounded in reason. *Widnall,* 75 F.3d at 1579.

In this case, the solicitation identified three evaluation factors to be considered "approximately equal to each other in importance": Mission Suitability, Cost/Price and Past Experience and Performance. In the source selection decision, the SSA found Gilcrest's proposal to be the best value for the government. In its decision, the SSA acknowledges that Unified was rated higher than Gilcrest in the mission suitability factor and that Unified and Gilcrest were "essentially equal" in the cost/price factor. In the final evaluation factor, past experience and performance, the SSA noted a clear distinction between Gilcrest's and Unified's proposals in favor of Gilcrest. Finally, the SSA explained it's rationale for the tradeoffs made in its best value analysis. The SSA determined that the significantly lower performance risk associated with Gilcrest's proposal justified its selection over Unified's small numerical scoring advantage. The court concludes based on the administrative record that (1) the proposals were evaluated solely on the three factors contained in the solicitation; (2) the source selection was properly documented; (3) the documentation included a reasonable explanation supporting the SSA's best value selection; and (4) Gilcrest's selection for the contract was within the SSA's discretion. Again, the court finds no merit in plaintiff's allegation based on its previous findings that the SEC did in fact consider the changes made in Gilcrests's final proposal and that SSA considered the SEC's final recommendations, including the changes in Gilcrest's FPR, in it's source selection decision.

Finally, defendant argues that plaintiff's allegation in Count VII that NASA failed to contemporaneously document the technical evaluation, the formal source selection decision, and the procurement transaction is baseless considering the extensive documentation of the entire procurement recorded in the administrative record. As the defendant points out, the administrative record contains extensive contemporaneous documentation of the SEC's probable cost analysis, the SEC's final and initial scoring of the proposals (including the technical evaluations), and the source selection statement.

## III. Plaintiff's Motion for a Preliminary Injunction

To be entitled to a preliminary injunction, plaintiff must demonstrate (1) a likelihood of success on the merits; (2) irreparable injury to plaintiff if defendant is not enjoined, including but not limited to the absence of an adequate remedy at law; (3) the harm to plaintiff outweighs the harm to defendant; and (4) the public interest is served by enjoining defendant. After careful consideration of the parties' pleadings, the administrative record, and the applicable law, the court concludes that plaintiff has failed to show a reasonable likelihood of success on the merits and has failed to sustain the burden of proof necessary to demonstrate that injunctive relief is warranted. Accordingly, plaintiff's motion for a preliminary injunction is denied.

## CONCLUSION

As a result of the court's analysis above, the court finds that judgment upon the record is appropriate. The court has considered all of plaintiff's concerns about the evaluation

and award of the contract. After carefully reviewing the administrative record submitted to the court, the court is unconvinced of the alleged improprieties in the procurement process. The SSA has a right to evaluate the proposals according to the stated criteria, and to award the contract to the offeror, who in his opinion, provided the best value to the government. Absent proof that the evaluation was arbitrary and capricious, an abuse of discretion occurred, or NASA's actions were not in accordance with law and that NASA's actions significantly prejudiced plaintiff, the court will not disturb the SSA's decision.

For the foregoing reasons, (1) defendant's motion for judgment on the administrative record is granted; (2) plaintiff's motion for judgment on the administrative record is denied; and (3) plaintiff's motion for a preliminary injunction is denied. The complaint is dismissed and the Clerk of the Court shall enter judgment in accordance with the foregoing.

**IT IS SO ORDERED.**