**EDP ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Logistics & Environmental Services Corporation, Defendant–Intervenor.**

No. 03–1281C.

United States Court of Federal Claims.

May 30, 2003.

Keith L. Baker, McLean, VA, for plaintiff.

Kenneth D. Woodrow, U.S. Department of Justice, Washington, DC, with whom were Robert D. McCallum, Assistant Attorney General, and Director David M. Cohen, for defendant.

David Hammond, Washington, DC, for defendant-intervenor.

**ORDER DENYING TEMPORARY RESTRAINING ORDER**

FIRESTONE, Judge.

Pending before the court is plaintiff EDP Enterprises, Inc.'s ("plaintiff's") motion for a temporary restraining order. The plaintiff

seeks to enjoin the government from commencing activities on contract no. DABJ41–03–D–0003 ("interim contract"), a contract for food services for the Department of Army, Fort Riley, Kansas ("Army" or "government"). Plaintiff objects to the bundled-service form of the solicitation for the interim contract. Plaintiff bases its challenge to the form of the bundled-services interim contract solicitation on its success before the General Accounting Office ("GAO") over a protest of A–76 solicitation no. DAKF19–99–R–0014 ("A–76 RFP"), a solicitation for many of the same services as the interim contract that it is now protesting. A hearing on the TRO was held on May 29, 2003, at which time Logistics & Environmental Services Corporation ("LESCO"), the interim contract awardee, was allowed to intervene.

For the reasons that follow, the plaintiff's motion is **DENIED**.

## BACKGROUND

The following facts are not disputed. The plaintiff is the incumbent contractor to provide food services to the Army at Fort Riley, Kansas. Its contract, scheduled to end on June 1, 2003, contained a negotiated provision for two one-month contract extensions if the Army saw fit. The Army decided not to exercise the option to extend the contract beyond the June 1, 2003 end date.

In 1999, the Army issued the A–76 RFP seeking certain logistics services, such as food services and maintenance, transportation, and warehousing services. The services sought were bundled into a single solicitation because the Army had determined the single-contract approach was more cost effective. The A–76 solicitation was put on hold during the appeal process.

While the A–76 RFP was on hold, in April 2002, the Army issued the solicitation for the subject interim contract. The solicitation for the interim contract called for the same bundling of services called for in the A–76 RFP. Proposals for the interim contract were received in May 2002. On March 7, 2003, the Army awarded the contract to LESCO, the only responsive bidder. Plaintiff does not dispute that it did not object to the bundling of services in the interim contract solicitation during the entire ten months between issuance of the interim contract solicitation and the award of the interim contract.

Plaintiff did, however, object to the bundling of services under the A–76 RFP once the hold was lifted. On February 11, 2003, before the closing date, plaintiff filed a protest with the GAO concerning the A–76 RFP. The plaintiff argued that the bundling of food services with the other logistic services was improper. The GAO issued its decision sustaining the plaintiff's protest on May 19, 2003, agreeing with the plaintiff that the government failed to provide a reasonable justification that bundling was necessary.

Armed with the GAO decision from the challenged A–76 RFP, the plaintiff filed its complaint and motion for a temporary restraining order on May 28, 2003 in this court challenging the interim contract on the same basis. At the hearing on May 29, 2003, the court heard from counsel and the contracting officer from Fort Riley, Kansas.

## DISCUSSION

### A. Standard of Review

Motions for temporary restraining orders are treated in accordance with the rules governing injunctions. Rule 65 of the United States Court of Federal Claims.[1]

 In order to obtain a temporary restraining order, the plaintiff must show the following:

(1) it will suffer irreparable injury unless the temporary restraining order issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the temporary restraining order, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits.

---

1. Where, as here, the action comes under the court's bid protest jurisdiction, the court is to review the agency's procurement related decision under the standards set forth in 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4) (2003).

*OAO Corp. v. United States,* 49 Fed.Cl. 478, 480 (2001); *Cincom Sys., Inc. v. United States,* 37 Fed.Cl. 266, 268 (1997). A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 129–130 (2d ed.1995)); *Minor Metals, Inc. v. U.S.,* 38 Fed.Cl. 379, 381 (1997) (citing *Golden Eagle Refining Co. v. United States,* 4 Cl.Ct. 622, 624 (1984)).

## B. Plaintiff is not entitled to a temporary restraining order

■ The government and LESCO argue that plaintiff does not have any likelihood of success on the merits on the grounds that its bid protest is untimely as a matter of law.[2] Specifically, the government and LESCO argue that under the GAO rule governing bid protests, a protestor must file its protest based on errors on the face of a solicitation prior to the close of the solicitation. The GAO rule, § 21.2 Time for filing, states:

> (a)(1) Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals. In procurements where proposals are requested, alleged improprieties which do not exist in the initial solicitation but which are subsequently incorporated into the solicitation must be protested not later than the next closing time for receipt of proposals following the incorporation.

4 C.F.R. § 21.2(a)(1) (2003). According to the government and LESCO, every court to examine the issue has concluded that where, as here, the error complained of is apparent on the face of the solicitation, the protestor must file its protest before the receipt of proposals or at the latest before award. *See ABF Freight System, Inc. v. United States,*

55 Fed.Cl. 392, 399 (2003) (citing *North Carolina Div. of Servs. For Blind v. United States,* 53 Fed.Cl. 147 (2002); *Aerolease Long Beach v. United States,* 31 Fed.Cl. 342, aff'd 39 F.3d 1198, 1994 WL 572795 (1994)); *see also MVM, Inc. v. United States,* 46 Fed.Cl. 126, 130 (2000) (citations omitted). Because plaintiff's bid protest action was filed after award, the government and LESCO contend that the court will ultimately be required to dismiss the protest as untimely.

The plaintiff argues that this court is not bound to follow the GAO rule and that the GAO rules, themselves, do not necessarily bar a post-award protest where the issue is significant. Plaintiff argues that this case presents such a situation. The plaintiff contends that because the GAO sustained the protest against the A–76 RFP, which had identical bundled services, that decision provides a justification for not following the ordinary GAO rule, and that this court should allow the protest to go forward. Plaintiff asks this court to maintain the "status quo" while this court examines the serious issue of improper bundling.

While the court appreciates that plaintiff moved expeditiously following the decision of the GAO, the court does not believe that waiting for such a decision is a sufficient basis to ignore both the GAO rule and consistent Court of Federal Claims precedent in this case. The plaintiff knew in April 2002 that the interim contract solicitation bundled food services with other logistical services, yet it elected not to file a timely protest. Instead, plaintiff participated as a sub-contractor in the interim contract solicitation and waited until after its prime contractor did not receive the award, more than ten months later, to file a protest. Plaintiff has not provided the court with any compelling reason for the delay. Plaintiff could have protected its interests by protesting the interim solicitation before it protested the A–76 solicitation.

In such circumstances, the court agrees with the government and LESCO that it is

---

**2.** It is not disputed that because plaintiff did not bid on the interim contract, it only has standing to challenge the contract based on its status as a "potential bidder." Because plaintiff could only

have bid on the interim contract if it were "unbundled," the case turns on whether plaintiff can challenge the Army's bundling decision.

likely to find that plaintiff's bid protest is untimely and must be dismissed. As the government and LESCO argue, the Court of Federal Claims has consistently followed the GAO rule in situations similar to the one at hand. It is not likely that this court will deviate from that consistent authority.

The court also agrees with the government and LESCO that plaintiff, having waited until the week before the transfer of functions is to take place, cannot prevail on the equities. The balance of the equities clearly weighs in favor of the government and the public. Because plaintiff could have timely resolved its objections without creating harm to itself or others, it should not now be heard to say that the government and LESCO should be put on hold because of plaintiff's timing decision. The government and LESCO are entitled to proceed with the awarded contract.

In these circumstances, plaintiff's suggestion that it will suffer irreparable harm is not supported. Plaintiff relies on several cases from this court to the effect that denial of the opportunity to bid constitutes irreparable harm. *See, e.g. OAO Corp.*, 49 Fed.Cl. at 480 (cases cited therein). While this court has in other cases held that a party who has been deprived of the opportunity to bid will suffer irreparable harm, that is not the case here. As discussed above, plaintiff in this case did participate in the solicitation at issue as a subcontractor, and only objected after its prime contractor failed to secure the bid. It is well-recognized that delay in seeking enforcement of rights is evidence of a lack of irreparable harm. *See Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prod. Co.*, 123 F.Supp.2d 470, 478 (E.D.Wis.2000); *Ahmad v. Long Island Univ.*, 18 F.Supp.2d 245, 249 (E.D.N.Y.1998); *see also* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995). Having elected not to protect its interests by filing a timely protest, plaintiff cannot now complain that loss of the opportunity to bid creates irreparable harm.

### Conclusion

Given plaintiff's failure to demonstrate a likelihood of success on the merits or irreparable harm, and the fact that the government and LESCO will be harmed if implementation of the interim contract is delayed, the plaintiff's motion for temporary restraining order is **DENIED.**

**IT IS SO ORDERED.**