**SOFTWARE TESTING SOLUTIONS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–2655 C.

United States Court of Federal Claims.

Nov. 21, 2003.

---

Reginald Morris Sealey, Upper Marlboro, MD, for plaintiff.

Greg Jaeger, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## ORDER

ALLEGRA, Judge.

This post-award bid protest action is before the court on plaintiff's application for a temporary restraining order. After careful consideration of the briefs filed by the parties, and for the reasons discussed below, the court **DENIES** plaintiff's application.

## I. FACTS [1]

On June 19, 2003, the Veterans Administration Health Administration Center (VA) in Denver, Colorado issued a Request for Proposals (RFP) No. 741–15–03, for information technology services, personnel, material and equipment to be used in independent testing of the VA's enrollment database computer program. Proposals were due June 30, 2003. Six offerors, including plaintiff Software Testing Systems (STS) submitted timely bids in response to the solicitation. On July 22, 2003, the VA awarded the contract to SysTest Labs (SysTest).

On July 23, 2003, STS filed a protest with the General Accounting Office (GAO), claiming that the RFP allowed insufficient time for the receipt of offers and that the RFP's requirements unfairly favored SysTest because they mirrored capabilities listed on

1. This summary of the facts is derived from plaintiff's complaint and from materials attached to the parties' memoranda. The administrative record has not yet been filed in this case.

SysTest's website. On July 25, 2003, the GAO dismissed STS's protest as untimely. It opined that the alleged improprieties in the solicitation were apparent prior to the closing time for receipt of proposals and thus, under the GAO's rules, should have been raised in a protest prior to that closing time. *See* 4 C.F.R. § 21.2(a)(1) (2003). The GAO also deemed plaintiff's other assertions without factual support.

Subsequently, the GAO rejected two requests for reconsideration on August 5, 2003, and September 11, 2003, respectively. In the second of these opinions, while reiterating its view that the original protest was untimely, GAO also rejected plaintiff's claim that the RFP unfairly favored SysTest because the specifications had been "written around" features of one of SysTest's products. Citing prior opinions, the GAO observed that it had previously held "that specifications based on a particular product are not improper in and of themselves ... as long as the specification is reasonably related to the agency's minimum needs."

On November 12, 2003, plaintiff filed a post-award bid protest in this court challenging the VA's contract award to SysTest and raising essentially the same allegations it made before the GAO. Insofar as is relevant here, plaintiff seeks a temporary restraining order preventing the United States from proceeding further with the performance of the contract in question. On November 18, 2003, plaintiff filed a memorandum in support of its application for a temporary restraining order; on November 20, 2003, defendant filed its opposition to the application.

## II. DISCUSSION

### A. Preliminary matters

■ Defendant initially argues that this protest is untimely as a matter of law, irrespective of the application of the four injunctive factors discussed below. Specifically, it contends that this court ought to apply the "GAO timeliness rule" under which a protestor must file its protest based on errors on the face of a solicitation prior to the time for receipt of initial proposals. 4 C.F.R. § 21.2(a)(1) (2003). Of course, this is the

rule invoked by the GAO in dismissing plaintiff's administrative protest. Defendant asserts, with clear support, that several decisions of this court have applied this timeliness requirement in "appropriate circumstances." *See, e.g., ABF Freight System, Inc. v. United States,* 55 Fed.Cl. 392, 399 (2003) (quoting *N.C. Div. of Servs. for Blind v. United States,* 53 Fed.Cl. 147, 165 (2002)); *see also EDP Enters., Inc. v. United States,* 56 Fed.Cl. 498, 500 (2003).

■ Recognizing that there may be several ways to read these opinions, this court, with all due respect, fails to see how a GAO rule that self-limits that agency's advisory role constitutes a limit, either legally or prudentially, on this court's exercise of jurisdiction. In this regard, 28 U.S.C. § 1491(b)(1) (2000) explicitly provides that this court shall have bid protest jurisdiction "without regard to whether suit is instituted before or after the contract is awarded." In this court's view, while delay in bringing a protest undoubtedly may be considered in the multi-factored analysis of whether injunctive relief is warranted, absent the application of equitable doctrines such as laches, such delay does not constitute an independent legal ground for rejecting a request for injunctive relief. *See Miss. Dept. of Rehabilitation Servs. v. United States,* No. 03–2038C at 3–5, 58 Fed.Cl. 371, 372–73 (Nov. 20, 2003) (adopting a similar position). Indeed, were this court to rule otherwise, it seemingly would have to apply the *entire* GAO rule, which includes exceptions to the timeliness requirement for "good cause shown" or if a protest raises "issues of significance." 4 C.F.R. § 21.2(c). This court cannot imagine that Congress intended this court's bid protest jurisdiction (or the prudential exercise thereof) to rise or fall on such squishy considerations. As the Supreme Court has said, "'[t]he exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.'" *United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 383, 70 S.Ct. 207, 94 L.Ed. 171 (1949) (quoting *Anderson v. Hayes Constr. Co.,* 243 N.Y. 140, 147, 153 N.E. 28, 29–30

(1926) (Cardozo, J.)); *see also Ins. Co. of the West v. United States*, 243 F.3d 1367, 1373 (Fed.Cir.2001).

■ Now a few words about laches. Although defendant has not yet formally pled any affirmative defenses, the equitable doctrine of laches may well be appropriately invoked here. That defense requires a showing of: "(1) unreasonable and unexcused delay by the claimant, and (2) prejudice to the other party, either economic prejudice or 'defense prejudice.'" *JANA, Inc. v. United States*, 936 F.2d 1265, 1269 (Fed.Cir.1991); *see also Cornetta v. United States*, 851 F.2d 1372, 1377–78 (Fed.Cir.1988) (en banc); *Hermes Consol., Inc. v. United States*, 58 Fed.Cl. 3, 20, 2003 WL 22416284 at *20 (2003).[2] According to the Federal Circuit, "[l]aches must be applied 'apart [from] and irrespective of' the statute of limitations." *Cornetta*, 851 F.2d at 1377–78 (quoting *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed.Cir.1986)). "No fixed boundaries define the length of time deemed unreasonable," this court has added, "and the duration should be viewed in light of the circumstances ... measured from the time the claimant knew or should have known about his claim to the date of the suit." *Aero Union Corp. v. United States*, 47 Fed.Cl. 677, 686 (2000). By way of further definition, it has been held that economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. *See, e.g., A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed.Cir.1992).

In the instant case, there is a strong argument in favor of applying laches. Plaintiff's only explanation for its delay in filing suit is that it was weighing the cost of litigating this matter. But, at this point, this assertion has a decidedly hollow ring as plaintiff has failed to explain why it took months to make that decision knowing full well that the contract at issue would quickly be performed. Moreover, it appears that defendant would be

economically prejudiced if this court granted permanent injunctive relief. As plaintiff readily admits, such an order would require the government to terminate the current contract, thereby obliging it to compensate the awardee for costs that would later be duplicated. *See, e.g., Nicon, Inc. v. United States*, 331 F.3d 878, 885–87 (Fed.Cir.2003) (describing this compensation requirement). By virtue of plaintiff's delay, defendant thus would be required to incur significant costs that otherwise could have been avoided.

When all is said and done, however, the court believes that the pending application must be measured under the typical factors for deciding whether to issue a temporary restraining order. To that discussion, the court now turns.

### B. Analysis of the Injunctive Factors

■ In order to obtain a temporary restraining order, the plaintiff must show: (i) it will suffer irreparable injury unless the order issues; (ii) the threatened injury to the moving party outweighs any damage to the opposing party; (iii) the temporary restraining order, if issued, will not be adverse to the public interest; and (iv) a substantial likelihood exists that the moving party will prevail on the merits. *See EDP Enters.*, 56 Fed.Cl. at 500 (2003); *OAO Corp. v. United States*, 49 Fed.Cl. 478, 480 (2001). A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 129–30 (2d ed.1995)); *see also Minor Metals, Inc. v. United States*, 38 Fed.Cl. 379, 381 (1997) (citing *Golden Eagle Refining Co. v. United States*, 4 Cl.Ct. 622, 624 (1984)). In the instant case, the absence of irreparable injury to plaintiff, the balancing of harms in

---

2. It is conceivable that the opinions indicating that the GAO timeliness rule should be applied in "appropriate circumstances" refer to situations in which the government has suffered some prejudice as a result of the delay. If that is true, it would seem preferable to address the elements of doctrines such as laches or perhaps equitable waiver directly, thereby eliminating any ambiguities or imprecisions introduced by incorporating the GAO rule, albeit in "appropriate circumstances," into a setting for which it was not designed.

favor of defendant, the public's interest, as well as the absence of any indicated likelihood of success on the merits, leave little doubt that the pending application should be denied. A few words of elaboration are in order.

## 1. Irreparable Injury

When assessing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." *Magellan Corp. v. United States,* 27 Fed.Cl. 446, 447 (1993); *see also PGBA, LLC v. United States,* 57 Fed.Cl. 655, 664 (2003). Plaintiff argues that it will suffer irreparable harm if the temporary restraining order is not granted, because the only other available relief—primarily, the potential for recovery of bid preparation costs—would not compensate it for its loss of valuable business. While the latter form of potential economic loss has been found sufficient to prove irreparable harm, *see Norfolk Dredging Co. v. United States,* 58 Fed.Cl. 167, 184, 2003 WL 22416757 at \*17 (2003); *United Int'l Investigative Servs., Inc. v. United States,* 41 Fed. Cl. 312, 323 (1998), *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 524 (1991), the instant situation is distinguishable due, in part, to plaintiff's unreasonable delay in filing this lawsuit.

Temporary restraining orders are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Though delay in seeking enforcement of those rights may not warrant the denial of ultimate relief, it may "standing alone, ... preclude the granting of preliminary ... relief," *Majorica S.A. v. R.H. Macy & Co., Inc.,* 762 F.2d 7, 8 (2nd Cir.1985) (per curiam), because the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 277 (2nd Cir.1985) (citation omitted) (finding no irreparable injury where plaintiff filed trademark infringement case ten weeks after direct notice of infringement). *See also Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel,* 872 F.2d 75, 80 (4th Cir.1989) (district court appropriately denied preliminary injunction where nine-month delay in filing environmental action challenging highway); *Oakland Tribune Inc. v. Chronicle Publ'g Co., Inc.,* 762 F.2d 1374, 1377 (9th Cir.1985) (finding that delay in requesting a preliminary injunction "implies a lack of urgency and irreparable harm").

In this case, the contract was awarded on July 22, 2003. On July 25, 2003, the GAO dismissed, as untimely, plaintiff's protest, positing that the protest raised issues that should have been raised prior to the award. On August 5, 2003, and, again, on September 11, 2003, the GAO declined to reconsider its decision. Plaintiff then waited more than two months before filing the instant complaint. By that time, the awardee, SysTest Labs, had completed approximately forty percent of the contract, representing seventy percent of the dollar outlays under the contract. Further work undoubtedly has been performed during the past week, as the contract is due to be completed by December 19, 2003. By delaying its request for a temporary restraining order until nearly four months after the contract was awarded and with the contract nearly performed, plaintiff has significantly undercut any claim that it will suffer irreparable injury if further performance on this contract is not enjoined immediately. Indeed, despite being given additional time to file a memorandum in support of its application, plaintiff has not supplied even the barest of details regarding its claim that, aside from errors committed by the VA, it likely would have received the contract and profited thereby. Moreover, plaintiff's naked assertions in this regard must be further discounted (if that is possible) in light of this court's finding below that it has not demonstrated a likelihood of success on the merits.

## 2. Balancing of Harms

Another factor that weighs against granting plaintiff's request for a temporary restraining order is the balancing of the harm to plaintiff against the harm to defendant if performance of the contract is enjoined. In contrast to what appears to be minimal irreparable injury to STS, the government seemingly will suffer damage if the requested

temporary restraining order is issued. In this regard, based on a declaration supplied the court, it appears that the services in question relate to a database that is designed to improve the delivery of services to the growing number of veterans seeking health care from the VA. According to this same declaration, if a temporary restraining order were issued, the VA would be forced either to stop the testing project in mid-performance thereby delaying the entire enrollment database or to continue implementing the database without testing. While the mere delay of a contract is insufficient, standing alone, to avoid preliminary relief, *see, e.g., PGBA,* 57 Fed.Cl. at 663, it appears that whatever harm that VA and those it serves will encounter if contract performance were enjoined here outweighs the irreparable harm alleged by plaintiff.

### 3. Public Interest

Plaintiff also contends that the public interest will be served by granting the requested temporary relief. Clearly, the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid. *See PGBA,* 57 Fed.Cl. at 663; *Cincom Systems, Inc. v. United States,* 37 Fed.Cl. 266, 269 (1997); *Magellan,* 27 Fed.Cl. at 448. "It is equally clear, however, that a procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." *Aero Corp. S.A. v. United States,* 38 Fed.Cl. 237, 242 (1997); *see also Magellan,* 27 Fed.Cl. at 448. Except in the most extraordinary circumstances, judicial infringement on the procurement process in the form of preliminary relief would be inappropriate where, as here, the plaintiff urging that a contract be suspended and an apparent awardee deposed waits an inordinate period of time—here nearly until the contract is completed—before pressing its claim. In the court's view, these considerations weigh particularly heavy here since at least one of plaintiff's claims—that the period for responding to the RFP here was overly abbreviated—was plain from the face of the RFP and easily could have been raised prior to the time for submitting offers.

### 4. Likelihood of Success

In a bid protest case, this court will enjoin the government only where an agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (2000); *see also* 28 U.S.C. § 1491(b)(4) (2000). By its very definition, this standard recognizes the possibility that there exists a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). Accordingly, this court will interfere with the government procurement process "only in extremely limited circumstances." *CACI, Inc.-Federal v. United States,* 719 F.2d 1567, 1581 (Fed.Cir.1983) (quoting *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1372 (Fed.Cir.1983)). Indeed, a "protestor's burden is particularly great in negotiated procurements because the contracting officer is entrusted with a relatively high degree of discretion, and greater still, where, as here, the procurement is a 'best-value' procurement." *Banknote Corp. of America, Inc. v. United States,* 56 Fed.Cl. 377, 380 (2003); *see also TRW, Inc. v. Unisys Corp.,* 98 F.3d 1325, 1327–28 (Fed.Cir.1996); *LaBarge Prods., Inc. v. West,* 46 F.3d 1547, 1555 (Fed. Cir.1995) (citing *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 617 F.2d 590, 597–98 (1980)); *JWK Int'l Corp. v. United States,* 52 Fed.Cl. 650, 655 (2002).

It is the burden of the aggrieved bidder to demonstrate that the challenged agency decision is either irrational or involved a clear violation of applicable statutes and regulations. *See Seattle Sec. Servs., Inc. v. United States,* 45 Fed.Cl. 560, 566 (2000); *Analytical & Research Tech., Inc. v. United States,* 39 Fed.Cl. 34, 42 (1997); *Aero Corp. v. United States,* 38 Fed.Cl. 739, 749 (1997). Further, "to prevail in a protest the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996). To dem-

onstrate prejudice, "the protestor must show 'that there was a substantial chance it would have received the contract award but for that error.' " *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed.Cir. 1999) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed.Cir.1996)).

In the instant case, plaintiff first alleges that the VA did not allow adequate time to respond to the RFP, allegedly because the agency intended that there be no real competition. In this regard, plaintiff notes that while agencies normally are required to allow thirty days to respond to a RFP, the VA allowed offerors only twelve. It is important, however, to test this claim against the regulations. Regarding such response times, FAR § 5.203(b) (2003) provides that "[t]he contracting officer must establish a solicitation response time that will afford potential offerors a reasonable opportunity to respond to each proposed contract action," and shall establish the response time by "consider[ing] the circumstances of the individual acquisition, such as the complexity, commerciality, availability and urgency." While section 5.203(c) of the FAR further indicates that "agencies shall allow at least a 30–day response time," that provision does not apply to the "acquisition of commercial items." As defined by FAR § 2.101 (2003), "commercial items" are non-real property items "customarily used by the general public or by nongovernment entities for purposes other than governmental purposes" that have been "sold, leased, or licensed to the general public" or "offered for sale, lease, or license to the general public;" this definition also encompasses any services procured in support of a commercial item. *Id.*

In the case *sub judice*, it appears that the items and services acquired by the VA were "commercial items," and that the response time, therefore, was not required to be thirty days, but rather only that necessary to allow "offerors a reasonable opportunity to respond." Accordingly, any notion that there was a *per se* violation of the FAR here is simply erroneous; indeed, in appropriate circumstances, the GAO has rejected protests regarding response times comparable to, and even shorter than, that established herein. *See, e.g., American Artisan Productions Inc.*, 98–2 C.P.D. ¶ 155 (1998) (rejecting protest of fifteen-day response time); *Crowley Am. Transp., Inc.*, 95–1 C.P.D. ¶ 277 (1995) (rejecting protest of three-day response time); *cf. Jack Faucett Assocs., Inc.*, 98–1 C.P.D. ¶ 155 (1998) (upholding protest of one-day response time). As these cases illustrate, the decision as to the appropriate preparation time lies within the discretion of the contracting officer. *See USA Info. Sys., Inc.*, 2002 C.P.D. ¶ 205 (2002); *Crowley*, 95–1 C.P.D. at ¶ 277. Accordingly, plaintiff must show that the time frame selected by the contracting officer was arbitrary and capricious and that the timing prejudiced its offer. Plaintiff, however, has not specifically alleged—let alone preliminarily shown—how the time allowed for responses hindered it or the competitive process here, so as to preclude adequate competition. Absent some indication of this, plaintiff has not demonstrated a likelihood of success on the merits as to this issue.

Likewise tenuous is plaintiff's assertion that the VA improperly favored SysTest because its RFP requirements were "written around" features of a SysTest product as listed on that company's website. Plaintiff contends that this improperly rendered the contract sole-source. The GAO, however, has determined that specifications based upon on a particular, pre-existing product are not improper provided the specifications are reasonably related to the contracting agency's minimum needs. *See, e.g., Staveley Instruments, Inc.*, 95–1 C.P.D. ¶ 256 (1995).[3] Indeed, this rule has been applied by the GAO in a number of cases involving computer-related products. *See, e.g., Infection Control and Prevention Analysts, Inc.*, 90–2 C.P.D. ¶ 7 (1990) (computer software package); *Gel Systems, Inc.*, 89–1 C.P.D. ¶ 433 (1989) ("brand name or equal" of electronic language learning system); *PacifiCorp Capital Inc.*, 1987 WL 102658 (GAO 1987) (computer system). In the instant case, plaintiff

---

**3.** *See also Imaging Systems Tech*, 97–3 C.P.D. ¶ 161 (1997); *Nidek, Inc.*, 96–2 C.P.D. ¶ 112 (1996); *Repco, Inc.*, 87–2 C.P.D. ¶ 517 (1987).

has not specifically alleged—let alone preliminarily shown—that the requirements in question overstate or otherwise exceed the agencies needs, or are otherwise unreasonable. Indeed, while plaintiff is correct in asserting the RFP includes language remarkably similar to that on the SysTest website, the copied language is general in nature, giving rise to *bona fide* questions whether the listed requirements can even fairly be described as being "written around" a particular product. Moreover, as with its other claim, plaintiff has neither alleged nor shown that it was prejudiced by the listed requirements, *e.g.*, that it could not fully satisfy one of the particular specifications.

Strikingly, while the numerous cases cited above suggest fatal deficiencies in plaintiff's case, plaintiff, in its memorandum in support of its application, has failed to cite a single authority in support of either of its assertions of error. It thus has not come close to demonstrating a likelihood of success on the merits. As noted by this court elsewhere, "[p]revailing in a bid protest entails more than the frenzied brandishing of a cardboard sword." *JWK Int'l. Corp.*, 52 Fed.Cl. at 663. Should this case proceed, much more will be required to demonstrate that cognizable errors occurred here that prejudiced plaintiff.

## III.  CONCLUSION

For the foregoing reasons, plaintiff's application for temporary restraining order is **DENIED**. On or before, **November 25, 2003**, plaintiff shall file a status report indicating whether it intends to continue to pursue injunctive relief in this matter or instead will seek only monetary relief. Following receipt of that report, the court will enter an appropriate schedule.

**IT IS SO ORDERED.**