OPINION DENYING TEMPORARY RESTRAINING ORDER
FIRESTONE, District Judge.
This post-award bid protest action comes before the court on the motion of the plaintiff, CC Distributors, Inc. (“CCD” or “plaintiff’), for a temporary restraining order. The plaintiff is the incumbent contractor. After careful consideration of the arguments presented by both parties and for the reasons discussed below, the court DENIES the plaintiffs motion.[1]
FACTS
The following facts are derived from the plaintiffs complaint and motion. The administrative record has not yet been filed. On February 17, 2005, the Air Force issued solicitation number FA2835-05-T-0003. The solicitation was in the form of a Request for Quotation (“RFQ”), and it required offerors to submit individual bids for approximately 1,500 items. The items, largely in the nature of hardware supplies, are for a Contractor Operated Civil Engineering Supply Store (“COCESS”) at Hanseom Air Force Base (“Hanscom”) in Massachusetts. The RFQ advised offerors that the procurement was being conducted pursuant to Federal Acquisition Regulation (“FAR”) Part 12, “Acquisition of Commercial Items,” and FAR Part 13, “Simplified Acquisition Procedures”. The solicitation contemplated awarding a firm fixed-price requirements contract.
The RFQ further provided that the award would be based on a “best value” determination. In this connection, the RFQ provided that offers would be evaluated according to FAR § 52.212-2, Evaluation — Commercial Items, and an Addendum to FAR § 52.212-2 that was provided in the RFQ. Under the evaluation criteria set forth in FAR § 52.212-2, “The Government will award a contract resulting from this solicitation to the *812 responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers: (i) Price; (ii) Past Performance.” The RFQ’s Addendum to FAR § 52.212-2 provided, “Proposals conforming to the solicitation will be determined technically acceptable. Once technically acceptable proposals are determined, tradeoffs may be made between past performance and price to determine the successful offeror.” Pl.Ex. B at 3; Pl.Ex. Q.
The Air Force received three timely offers for the base year plus two option years. The putative awardee, Maratech Engineering Services, Inc. (“Maratech”) submitted an offer of * * *. The plaintiff, CCD, submitted the next lowest offer of * * *. National General Supply Incorporated (“NGSI”) submitted the highest offer of * * *.
The Air Force conducted a technical evaluation. According to the Air Force, the technical evaluator examined each proposing of-ferors’ unit pricing and noted any pricing that he found problematic. Evaluation notices were sent to each of the offerors and each was asked to either verify a price or examine whether the item was priced on a proper unit basis. With regard to each offer, the technical evaluator indicated that all unit prices appeared reasonable with the exception of those noted. With regard to Mara-tech’s proposal, the technical evaluator identified eight items as potentially unreasonable. Five items noted were identified on internal documents to be unreasonably low, and three were noted because of a possible incorrect unit size. With regard to CCD’s proposal, two price quotations were questioned as too low, two were questioned because the prices were too high, and one price was questioned because it appeared to be based on an incorrect unit size. Finally, with regard to NGSI, eight items were noted. Prices were questioned on three items because they appeared to be too low and five were questioned because they appeared to be too high.
The technical evaluator was apparently not perfectly consistent in his questioning among the three offerors. For example, when faced in some instances with similar prices from two different offerors, he may have indicated that one offeror’s price was too high and not indicated that the other offeror’s price was high. Accordingly, some offerors were asked to provide verifications for certain items while others were not asked to verify comparably priced items. In addition, it does not appear that the technical evaluator raised issues where the price differential between or among offerors was substantial. Mara-tech offered prices on some items that were significantly lower than the price offered by CCD. According to CCD, Maratech’s proposal is dramatically less than CCD’s on 279 items. In some instances the difference is nearly 25,000% (Maratech’s price was * * * for an item whereas CCD’s price for that same item was * * *).
On March 17, 2005, the Contracting Officer (“CO”) made the decision to award the contract to Maratech on the basis of price and past performance. The CO’s memorandum for the record indicated that all three of the offers conformed to the requirements of the solicitation. The final source selection memorandum explained that the CO was making her “best value” determination in favor of Maratech because, “when compared to the lowest priced offeror, the next higher priced offeror is 104% higher.” Pl.Ex. Q at 2. The CO noted that Maratech had received a * * * past performance rating, while CCD had received an * * * rating. Nonetheless, she stated that “[t]he difference in price far outweighs the difference in the performance confidence- levels____Awarding to the next higher priced offeror for an increased level of past performance from * * * to * * * for the 104% additional price premium is not justified and would not be in the best interest of the government.” Id.
CCD was informed of the CO’s decision on March 18, 2005. Thereafter, CCD requested a debriefing, which was provided on March 21, 2005. CCD then filed a bid protest with the Government Accountability Office (“GAO”) on March 23, 2005. The contract award was stayed and CCD was issued an interim purchase order contract with two thirty-day options. The first option expired on May 31, 2005. *813 In its protest before the GAO, CCD challenged the Maratech award on two grounds. First, CCD argued that the Air Force had conducted a flawed price analysis and determination of contractor responsibility. Second, CCD alleged, but then withdrew, a claim that Maratech has an organizational conflict of interest. The GAO denied the bid protest on May 5, 2005. CCD filed the present action, nearly twenty days later, on May 24, 2005, one week before the first option was to expire on May 31, 2005.
In the complaint, CCD again challenges the Air Force’s price analysis and the determination of contractor responsibility. The complaint alleges that the price analysis was arbitrary and capricious because the technical evaluator failed to evaluate all offers for price reasonableness on a consistent basis. In support of this claim, CCD identifies nine items, out of a possible 1,500 items, for which Maratech received requests for verification of its bid and CCD did not or vice versa. These include: (1) a government-estimated * * *- * * * gas leak detector that Maratech offered at * * * and CCD offered at * * *, for which CCD complains that it was not put on notice that the price was too high; (2) a government-estimated * * * water heater, for which CCD’s price of * * * was questioned, but Maratech’s price of * * * was not; (3) a government-estimated * * * water heater, for which CCD received a request for verification for its * * * offer, but Maratech did not, although Maratech priced the same item at * * *; (4) a government-estimated * * *-* * * air conditioner, for which the technical evaluator questioned NGSI’s * * * bid, but not Maratech’s * * * bid for the same item; (5) a government-estimated * * *_* * * towel bar, for which NGSI’s * * * bid was questioned but CCD’s * * * bid was not; (6) a government-estimated * * *_* * * leaf bjower) for which NGSI’s * * * offer was questioned, but Maratech’s * * * bid for this item and CCD’s * * * bid for this item were not; (7) a government-estimated * * * flushometer, for which NGSI’s * * * price was questioned, but CCD’s * * * bid and Maratech’s * * * bid were not; (8) government-estimated * * *- * * * gloves, for which NGSI’s bid of * * * was questioned, but CCD’s * * * bid and Maratech’s * * * bid were not; and (9) government-estimated * *«.*** mortar mix for which NGSI’s * * * bid was questioned, but Maratech’s quote of * * * was not.
CCD also challenges the Air Force’s failure to account for the significant price differences between Maratech’s and CCD’s offers. As noted above, CCD identifies 279 instances in which Maratech’s prices were nearly 25,-000% to 100% lower than CCD’s. CCD does not allege that this was also true with respect to the government estimates. CCD alleges that given its view that Maratech’s prices were “unreasonably low,” the CO’s ultimate reasonableness determination was arbitrary and capricious.
CCD also challenges the Air Force’s determination of “responsibility,” under FAR § 9.103(a). CCD contends that where, as here, Maratech’s prices were “unreasonably low” the CO should have made a determination of non-responsibility and referred the matter to the Small Business Administration for a Certificate of Competency pursuant to FAR § 9.103(b) and FAR subpart 19.6.
CCD’s complaint was accompanied by a motion for a temporary restraining order. The court heard argument on the motion via telephone on May 25, 2005.
DISCUSSION
I. Standard of Review
In order to obtain a temporary restraining order a plaintiff must show: (1) a substantial likelihood of success on the merits of its case; (2) it will suffer irreparable harm; (3) the balance of hardships favors the grant of the injunction; and (4) the injunction, if issued, is in the public interest. See PGBA. LLC v. United States, 389 F.3d 1219, 1228-29 (Fed.Cir.2004). The court will examine each requirement in turn.
II. Likelihood of Success on the Merits
In a bid protest action the court will enjoin the government only where the agency’s actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 28 U.S.C. § 1491(b)(4) (2005); 5 U.S.C. § 706 (2005). This has been *814 construed to mean that an aggrieved bidder must “demonstrate that the challenged agency decision is either irrational or involved a clear violation of the applicable statutes and regulations.” Software Testing Solutions, Inc. v. United States, 58 Fed. Cl. 533, 538 (2003).
In the instant case, the plaintiff cannot meet this burden. CCD alleges that the agency’s technical evaluation was arbitrary and capricious. CCD alleges that in nine instances the evaluator did not question the offerors on a consistent basis. In addition, CCD alleges that the evaluator did not consider the significant price differences between Maratech’s and CCD’s offers. Relying on these same complaints, CCD argues that the Air Force’s responsibility determination was not supported. CCD does not, however, directly contend that Maratech cannot perform the contract at the offered price. It has not presented any evidence through affidavit or otherwise to establish that Maratech cannot perform.
The government argues in response that the plaintiff is not likely to prevail on its claims because this case involves a fixed-price contract in which the agency has broad discretion to consider price reasonableness. The government contends that because a fixed-price contract places the risk and responsibility for the contract costs on the contractor, the government was not obligated to conduct the type of price analysis the plaintiff advocates. The government argues that it was only required to ensure a fair price for the government, which it contends was accomplished in this case.
The government further argues that because there is no evidence that the contract cannot be performed at the price offered by Maratech, there is no basis to question the Air Force’s responsibility determination. The government contends that it did not have to account for the differences between Maratech’s prices and CCD’s prices.
The court agrees with the government that CCD is not likely to succeed on the merits of its claim. At bottom, the plaintiffs argument rests on its contention that the Air Force was required to review each offer on an identical basis and to account for all of the price differences between the lowest and next highest offer. CCD does not point to any regulation or precedent to support this view, and the court’s research did not reveal that the government had this obligation. To the contrary, the purpose of evaluating price is usually aimed at ensuring that the government pays a fair and reasonable price, that is, that the price is not unreasonably high. The FAR states with regard to price evaluations undertaken in the more detailed Part 15 procedures that when the government is awarding a fixed-price contract, “[njormally, competition establishes price reasonableness.” FAR § 15.305(a)(1) (2005). See First Enterprise v. United States, 61 Fed. Cl. 109, 123 (2004).
Here, in accordance with the applicable FAR Part 13 provisions, the Air Force conducted a technical evaluation and noted areas of concern. The plaintiff identifies nine instances in which there were inconsistencies, however, given the number of items at issue in this procurement, the court cannot assume that the evaluation was not sufficient for the remaining 1,491 items, which were not questioned. CCD has not shown that the Air Force erred with respect to these other items. Similarly, the fact that CCD’s price was significantly greater than Marateeh’s on certain items does not prove that the Air Force’s analysis was flawed. Marateeh’s proposal was 104% less than CCD’s. The fact that Maratech’s proposal on a single item may have been 25,000% less may be eye-catching, but it does not prove that CCD’s prices were reasonable or that Maratech’s were not. As noted above, CCD does not directly allege that Maratech cannot perform the contract at the price offered. CCD has not introduced any evidence by affidavit or otherwise to show that the contract cannot be performed at Maratech’s price. Indeed, a firm, in its business judgment, properly may decide to submit a price for a fixed-price contract that is extremely low. Brewer-Taylor Assocs., B-277845, 97-2 C.P.D. ¶ 124 at 4 (Oct. 30,1997).
Absent strong evidence that Maratech’s prices are so low that it is unlikely that the contractor can perform the contract at the offered price, the plaintiff is not likely to *815 succeed in showing that the responsibility determination in this case was arbitrary and capricious. See id.; Government Contracts Consultants, B-294335, 2004 C.P.D. 11202 (Sept. 22, 2004) (holding in similar circumstances before the GAO that a responsibility determination will not be set aside absent evidence that the contracting officer failed to consider available relevant evidence or violated a statute or regulation). While the GAO’s standard is obviously not binding on this court, it provides useful guidance in determining the circumstances in which an award should be set aside when a protestor questions a putative awardee’s prices as being too low.
In view of the foregoing, the court finds that the allegations in the present complaint, even if proved, do not establish that the Air Force’s decision was arbitrary or capricious in conducting its price analysis or finding that Maratech was responsible. The fact that the technical evaluator did not clarify every difference in prices on * * * gloves or * * * gas leak detectors, or even * * * water heaters, among the offerors does not mean that the government did not conduct a meaningful or fair price analysis. There were 1,500 items involved in the contract. The court cannot conclude on the basis of nine items that the analysis was arbitrary and capricious because not every offeror was questioned in the same way. There is no basis to question the Air Force’s treatment of the offerors with regard to the remaining items. Similarly, the fact that CCD offered 279 items at more than 100% more than Maratech does not mean that Maratech’s prices are so low as to raise potential concerns regarding responsibility.[2] While Mar-atech’s prices might be too low in CCD’s judgment, CCD has not alleged sufficient facts to suggest that the CO had a basis to question Marateeh’s responsibility.
In view of the foregoing, the court finds that the plaintiff is not likely to succeed on the merits of its claim.
III. Irreparable Injury and Balancing of the Harms
The plaintiff argues that it will suffer an irreparable harm, because it has been denied a proper procurement process and because of the potential economic loss it will face if it is forced to leave Hanscom. The court acknowledges that these arguments can be sufficient to establish irreparable harm and to support an injunction, but that is not always the case. See Software Testing, 58 Fed. Cl. at 537 (holding that while loss of valuable business has been held to be sufficient to prove irreparable injury, in the plaintiffs ease it was not sufficient). The government also does not contend that it will be irreparably injured if a temporary restraining order is issued.
Nonetheless, the court does not find that the balance of harms weighs in favor of a temporary restraining order. First, the plaintiff has failed to demonstrate real urgency in this case. It waited until a week before its option expired to file this action, which was nearly three weeks after the GAO dismissed the plaintiffs protest. Second, there is no basis on this record for the court to conclude that CCD will likely receive the final award. CCD argues that a better evaluation is required and that Maratech may or may not be the proper awardee. It does not, however, contend that it is entitled to an immediate award. Where it is not clear that the plaintiff will likely obtain the award, and simply wishes to continue on as the incumbent while this protest is pending, the court is not persuaded that a temporary restraining order is needed to avoid any irreparable injury to the plaintiff. See PGBA, L.L.C. v. United States, 60 Fed. Cl. 196, 221 (2004) (noting that an incumbent contractor’s loss of a successor contract is not sufficient to prove irreparable harm), aff'd, 389 F.3d 1219 (Fed. Cir.2004).
IV. Public Interest
The plaintiff argues that the public interest will be served by the issuance of a temporary *816 injunction, in that the public interest will be served by ensuring a proper procurement process. See Cardinal Maintenance Serv., Inc. v. United States, 63 Fed Cl. 98, 111 (2004) (noting that preserving the integrity of the procurement process is in the public interest). However, the court is also mindful that a procuring agency “should be able to conduct procurements without excessive judicial infringement upon the agency’s discretion.” Aero Corp., S.A. v. United States, 38 Fed. Cl. 237, 242 (1997). Where, as here, the plaintiffs arguments challenge the exercise of agency discretion and do not turn on any identified statutory or regulatory violation by the procuring agency, the public interest weighs in favor of not interfering with the procurement decision, absent clear evidence of irrationality. Here, the plaintiff failed to make that case. Thus, the public interest weighs in favor of allowing the procurement to proceed, particularly where, as here, it will result in a significant cost savings to the government.
CONCLUSION
For the foregoing reasons, the plaintiffs application for a temporary restraining order is DENIED.
IT IS SO ORDERED.

. The court ruled orally at a telephonic status conference on May 26, 2005. This written opinion provides a more detailed analysis supporting that ruling.

. The plaintiff's reliance on Breman Enterprises, Inc., GSBCA No. 5733, 80-2 B.C.A. 14755, 1980 WL 2465 (Oct. 23, 1980), to suggest that the existence of a wide range between the low bid price and the other bid prices is sufficient to charge the contracting officer with notice of probable error is misplaced. Breman deals with the question of whether a contract can be reformed for unilateral mistake, not the question of whether an award should be set aside, where as here, verification of bid items was sought.